UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROBERT AGOSTISI,

                              Plaintiff,

               - against -

JOHN BENDO, SCOTT MENDEL, JOHN
MCNALLY, MICHAEL DELURY, KAREN
MCINNIS, and ELIZABETH TRESTON
(in their official and individual capacities), and
the CITY OF LONG BEACH

                              Defendants.
------------------------------------------------------------X

FILED
CLERK

3:52 pm, Aug 18, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

MEMORANDUM
AND ORDER

Civil Action
No. 21-7182 (GRB)(LGD)

**GARY R. BROWN, United States District Judge**:

In this case alleging violations of First Amendment rights, political retribution, and litigation over separation pay agreements, the Court is presented with defendants' motion to dismiss and motion to strike. For the following reasons, defendants' motions are DENIED.

*Brief Factual and Procedural Background*

The following allegations are presumed to be true for the purpose of the present motions. Plaintiff Robert Agostisi ("Plaintiff") was hired by defendant City of Long Beach ("Defendant" or the "City") in late 2006 as assistant corporation counsel, and through 2019, received several promotions. Docket Entry ("DE") 7 ¶¶ 4, 12. Plaintiff represented the City in labor, employment, and civil right cases. *Id.* ¶ 13. Pursuant to the City of Long Beach City Charter (the "City Charter"), exempt employees (the "exempts") are appointed by the City Manager, who is selected by the City Council. *Id.* ¶ 23. The exempts include employees hired by the current or past political administrations. *Id.* As an appointed official, Plaintiff was an "exempt" employee of the City. *Id.* ¶¶ 21-22. In December 2016, Plaintiff advised the City Manager, Jack Schnirman, that he intended to resign. *Id.* ¶¶ 18, 85. Schnirman convinced Plaintiff to remain employed at least through the

completion of an upcoming trial for which Plaintiff was preparing. *Id.* ¶¶ 84, 86. Plaintiff agreed, and the two executed a separation pay agreement whereby Plaintiff would receive payment for his unpaid, accrued time within 10 days of his termination (the "Separation Agreement"). *Id.* ¶ 89.

In October 2017, Plaintiff again planned to leave the City's employment. *Id.* ¶ 112. Knowing that the City was preparing to issue separation pay to employees who were leaving City service by the end of the year, Plaintiff and Schnirman agreed to modify Plaintiff's Separation Agreement such that Plaintiff would receive 80% of his separation pay by November 16, 2017, amounting to $119,854.61. *Id.* ¶¶ 113–15; DE 23 at 4. Though Plaintiff timely received his separation pay check, he waited to cash it while weighing employment options. DE 7 ¶ 117. And after negotiating with City officials, Plaintiff accepted a $25,000 raise and decided to remain employed with the City. *Id.* ¶¶ 117–21. Soon thereafter, Plaintiff attempted to return his separation check to the City but the City refused to accept it, claiming that the wages had already been reported for tax purposes. *Id.* ¶¶ 123–25. Plaintiff then deposited the check into his bank account. *Id.* ¶ 126.[1]

Throughout 2018 and 2019, the City's policy concerning separation pay agreements with exempt employees, such as Plaintiff, became one of growing political concern. *See, e.g.*, *id.* ¶¶ 139, 187, 258. In sum and substance,[2] a new emerging political faction, the New Wave Democrats, began to criticize the City's separation pay agreement practices. *See, e.g.*, *id.* ¶¶ 163, 187. As such, the New Wave Democrats criticized Plaintiff for his Separation Agreement as well as his association with Schnirman, the perceived leader of opposition to New Wave. *Id.* ¶¶ 133, 184,

---

[1] It is stunning that, by Plaintiff's own allegations, which the Court deems to be true, when confronted with the situation where he has received a check for nearly $120,000, which he may have not been entitled to as he did not leave the City's employment for some years after, Plaintiff—an attorney—deposited the check into his personal checking account.

[2] Though potentially relevant to the ultimate issues of the case, the myriad of allegations as to the political environment and animosity towards Plaintiff set forth in his 64-page Amended Complaint need not be discussed in depth to resolve the present motions.

384.

Eventually, the City Council adopted a resolution authorizing a state court action against Plaintiff to claw back monies paid to him pursuant to the Separation Agreement. *Id.* ¶ 356. On July 17, 2020, the City brought suit against Plaintiff in the Nassau County Supreme Court, entitled *City of Long Beach v. Agostisi*, Index No. 607238/2020 (the "State Action"). *Id.* ¶ 363. Specifically, the City alleged: (1) breach of fiduciary duty, (2) fraud, (3) conspiracy to commit fraud, (4) constructive fraud, (5) conversion of property and misappropriation of funds, (6) unjust enrichment, (7) money had and received, (8) constructive trust, and (9) an accounting. *See generally* DE 22-4. With consent of all parties, the State Action was transferred to Suffolk County Supreme Court, Index No. 002684/2020, to avoid the perceived appearance of impropriety based on Defendant Scott Mandel's employment with the Nassau County Supreme Court. *See* DE 7 ¶ 364; DE 27 at 2. After Plaintiff's motion to dismiss in the State Action was denied, Plaintiff filed an answer, raising several affirmative defenses relating to the Separation Agreement though he did not allege a breach of contract counterclaim. *See generally* DE 22-6.

Plaintiff commenced this action against Defendants on December 30, 2021, alleging (1) unlawful retaliation under 42 U.S.C § 1983, (2) violation of due process, (3) breach of contract, and (4) defamation and unlawful retaliation. DE 1. Plaintiff filed an Amended Complaint on February 18, 2022, adding a violation of Article 2 Section 14 of the City Charter. DE 7 at 62. On June 8, 2022, the Court held a pre-motion conference to discuss Defendants' anticipated motion to dismiss. The Court granted Defendants' motion as to the due process claim but denied the motion as to the unlawful retaliation and defamation claims and set a briefing schedule as to Plaintiff's breach of contract and City Charter claims, along with Defendants' motion to strike certain paragraphs of the Amended Complaint.

This opinion follows.

***Discussion***

*Standard of Review*

Motions to dismiss are decided under the well-established standard of review for such matters, as discussed in *Burris v. Nassau County District Attorney*, No. 14-5540 (JFB) (GRB), 2017 WL 9485714, at *3-4 (E.D.N.Y. Jan. 12, 2017), *adopted by* 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017), and incorporated by reference herein. The gravamen of that standard, of course, is the question of whether, assuming the allegations of the complaint to be true solely for the purposes of the motion, the complaint sets forth factual material to render the claims plausible. *See id.*

*Breach of Contract Claim*

Defendants argue that this Court should abstain from reviewing Plaintiff's breach of contract cause of action because the State Action represents a more appropriate forum. Specifically, Defendants contend that since the State Action addresses the same issues surrounding Plaintiff's breach of contract claim, this Court should dismiss this cause of action to avoid duplicative litigation.

Before a court may consider whether it should abstain from exercising jurisdiction over a matter, it must first determine that the federal and state court cases are "parallel." *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998). "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Abercrombie v. College*, 438 F.Supp.2d 243, 258 (S.D.N.Y. 2006) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997)). "Perfect symmetry of parties and issues

is not required.  Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case."  *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012) (citations omitted).  "Any doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction."  *Id.* at 577–78 (citations omitted).

Here, the concurrent proceedings are not parallel since the parties, issues, and relief sought are sufficiently distinct.  As to the parties, the only defendant here also named in the State Action is the City.  The instant action includes additional defendants not named in the State Action, to wit: John Bendo, Scott Mandel, John McNally, Michael Delury, Karen McInnis, and Elizabeth Treston.  *See* DE 7 at 1.  And Plaintiff raises separate and distinct issues compared to the State Action as the instant action presents nuanced First Amendment questions.  Finally, as to the relief, monetary damages are sought in both actions but the City also seeks equitable relief only in the State Action.  *See generally* DE 22-4; DE 7.  To be sure, there is a near certainty—let alone a "substantial likelihood"—that the State Action would *not* "dispose of all claims presented [here]." *See Shields*, 891 F. Supp. 2d at 577.  As such, this Court will retain jurisdiction over the breach of contract claim.

Even assuming, *arguendo*, that the concurrent proceedings are parallel, the principles of abstention favor exercising jurisdiction.  The Supreme Court in *Colorado River* and its progeny have established guiding principles for a federal court to consider in determining whether or not to exercise jurisdiction over a claim.  *Id.* at 521; *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ("*Colorado River*").  The abstention doctrine comprises a few "extraordinary and narrow exception[s]" to a federal court's duty to exercise its jurisdiction, where the resolution of existing concurrent state-court litigation could result in "comprehensive

5

disposition of litigation." *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (citing *Colorado River*, 424 U.S. at 813).

To determine whether the a court should abstain from exercising jurisdiction, courts consider the following six *Colorado River* factors:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction;
>
> (2) whether the federal forum is less inconvenient than the other for the parties;
>
> (3) whether staying or dismissing the federal action will avoid piecemeal litigation;
>
> (4) the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other;
>
> (5) whether federal law provides the rule of decision; and
>
> (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Id.* (citations omitted). "No one factor is necessarily determinative" but "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15-16 (1983) ("*Moses Cone*")). "Thus, a facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." *Id.* "Only the clearest of justifications will warrant dismissal." *Moses Cone*, 460 U.S. at 15. Indeed, federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Colorado River*, 424 U.S. at 817–18 (citations omitted). The burden of persuasion rests on the party opposing the exercise of federal jurisdiction. *Arkwright-Bos. Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir. 1985).

Here, only one factor merits discussion as the remaining five factors either outright favor exercising jurisdiction, or are neutral, and thus, still favor abstention. *See Woodford*, 239 F.3d at 522. The issue of piecemeal litigation must be considered. *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 102 (2d Cir. 2012) (citation omitted).

Plaintiff's contract theory appears to be before both courts, though not raised as a counterclaim in the State Action.[3] This presents a risk of inconsistent outcomes. This factor alone, however, will not carry the day. *See Niagara Mohawk Power Corp.*, 673 F.3d at 101 ("[T]he court erred in concluding that this factor outweighed the other *Colorado River* factors that militated against abstention.").

Furthermore, allowing the federal action to proceed will not necessarily create piecemeal litigation that might be avoided by dismissal. *See Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986). This is not a case in which Plaintiff has filed both a state and federal action. Rather, the City is the prosecuting party in the State Action and Plaintiff's breach of contract claim is only relevant there as a *potential* counterclaim. This case would move forward on other counts even if this Court were to dismiss Plaintiff's breach of contract claim. Thus, "resolution of existing concurrent state-court litigation" would *not* "result in 'comprehensive disposition of litigation [here].'" *See Woodford*, 239 F.3d at 522 (purgandum).[4]

Therefore, Defendants have failed to satisfy their burden in persuading this Court that it should depart from its "virtually unflagging obligation" to exercise jurisdiction over Plaintiff's breach of contract claim.[5]

*City Charter Claim*

Defendants argue that Plaintiff's City Charter claim should be dismissed because Article II, Section 14 of the City Charter does not provide a private right of action. Defendants rely

---

[3] Notably, in moving to dismiss the State Action, Plaintiff's contract theory was deemed *void ab initio*. DE 25 at 3-4.

[4] *See Farmers Property and Casualty Insur. Co. v. Fallon, et al.*, No. 21-CV-6022 (GRB)(ARL), 2023 WL 4975977, at *3 n.6 (E.D.N.Y. Aug. 3, 2023) (discussing use of "purgandum" to indicate the removal of superfluous marks for the ease of reading).

[5] Defendants' argument that dismissal is warranted under the prior pending action doctrine similarly fails as that doctrine only applies "where the two overlapping lawsuits are both pending in federal court." *See Wenegieme v. Bayview Loan Servicing*, No. 14-CV-9137 (RWS), 2015 WL 2151822, at *3 (S.D.N.Y. May 7, 2015) (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)).

primarily on the proposition that other sections of the City Charter contain penalty provisions whereas the operative section here is silent on enforcement.  And so, defendants argue, the legislature intentionally chose not to provide a particular enforcement mechanism for Section 14. But Defendants, as the movants seeking dismissal, have failed to provide the Court with any authority supporting its position or even direct the Court to a related City Charter provision providing an alternative enforcement mechanism, merely arguing that "there are [other] sections expressly providing for penalties of such sections."[6]  *See* DE 23 at 11; *Cf. Ortiz*, 37 N.Y.3d at 364 (holding that the creation of a private right was not consistent with the statute's legislative scheme where the Court identified several alternative enforcement mechanisms in other related provisions).

To be sure, this Court's own research identified several courts in which claims brought under Section 14 of the City Charter were allowed to proceed.  *See, e.g.*, *Canner v. City of Long Beach*, No. 12-CV-2611 (DRH)(GRB), 2015 WL 4926014, at *9 (E.D.N.Y. Aug. 18, 2015) (denying defendants' motion to dismiss with respect to plaintiff's Article II, Section 14 City Charter claim); *Charleson v. City of Long Beach*, 297 A.D.2d 775, 776 (2d Dep't 2002) (affirming denial of defendants' motion for summary judgment with respect to plaintiff's Article II, Section 14 City Charter claim).

Therefore, in light of this authority and Defendants' failure to provide sufficient authority to the contrary, Defendants' motion must be denied.

*Motion to Strike*

Defendants argue that certain paragraphs of Plaintiff's Amended Complaint should be

---

[6] The Court also finds it curious to be tasked with determining whether a statutory scheme provides for a private right of action when no party has bothered to provide the Court with the complete document.  *See* DE 24-1 (Plaintiff providing only *part* of the City Charter).

stricken.[7]  Under Rule 12(f), the court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).  "Motions to strike are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation."  *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 225 (E.D.N.Y. 2015) (citations omitted).  Indeed, "[c]ourts should not tamper with the pleadings unless there is a strong reason for doing so."  *Villalba v. Houslanger & Assocs., PLLC*, No. 19-CV-4270 (PKC)(RLM), 2022 WL 900538, at *23 (E.D.N.Y. Mar. 28, 2022) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).  To prevail on a motion under Rule 12(f), the movant must show that: (1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the issues in the case; and (3) to permit the allegations to stand would result in prejudice to the movant.  *Id.* (citations omitted).

Here, Defendants have failed to establish that the challenged allegations would result in prejudice—a necessary showing.  *See Gssime v. Nassau Cnty.*, No. 09-CV-5581 (JS)(ARL), 2014 WL 810876, at *2 (E.D.N.Y. Feb. 28, 2014) (denying motion to strike in part where the defendant had "not indicated that any prejudice would result absent striking the reply").  Indeed, Defendants' moving submission is entirely silent on this issue.  *See* DE 23 12-13.  And even after Plaintiff raised the point in his opposition, *see* DE 25 7-11, Defendants offer only the conclusory statement

---

[7] In their brief, Defendants summarily cite to 169 paragraph numbers of the Amended Complaint, bucketing these paragraphs in a conclusory fashion, without explanation or argument, as "impertinent," "unnecessary," "reflecting on the individual Defendants' moral character," or "legal conclusions," as the sole basis to strike the allegations contained therein.  *See* DE 23 at 12-13.  Such shorthand application is inconsistent with the spirit and letter of the rules of this Court.  This alone provides a basis to deny the motion.  While the Court declines Defense counsel's implicit invitation to decode this intriguing list, such shoddy work produces the expected results.  For example, counsel would be hard pressed to explain how paragraph 29, which offers a dictionary definition of "entitled," could be deemed impertinent.  *See id.* at 12; DE 7 ¶ 29.  Counsel is cautioned that additional submissions of this nature will result in sanctions.

that "the allegations are unduly prejudicial to defendants." *See* DE 27 at 4.[8]  Such conclusory arguments, however, are insufficient.  *See Chen v. Gonzales*, 163 F. App'x 82, 83 (2d Cir. 2006); *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, No. 19-CV-4355 (VM)(GWG), 2021 WL 1956369, at *9 n. 4 (S.D.N.Y. May 17, 2021), *report and recommendation adopted,* No. 19-CV-4355 (VM), 2021 WL 3082209 (S.D.N.Y. July 21, 2021) (rejecting conclusory statement that certain allegations are "scandalous matters under Rule 12(f)" for failing to provide "any actual argument" in support).

Therefore, Defendants have had ample opportunity to sufficiently address this issue but have wholly failed to satisfy the exacting standards of Rule 12(f).

### Conclusion

Based on the foregoing, Defendants' motion to dismiss and motion to strike are DENIED. The parties are directed to proceed with discovery with the assigned Magistrate Judge.

**SO ORDERED.**

Dated: Central Islip, New York
        August 18, 2023

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge

---

[8] Defendants carp that "spatial limitations prevented us from addressing each and every paragraph individually."  *Id.* This argument might be valid if (1) Defendants' moving submission had not come *under* the Court's twenty-page limit, or (2) Defense counsel, who appears before this Court regularly and is well-aware of this Court's Individual Rules, sought an increased page limit pursuant to Individual Rule II(b).  Most tellingly, Defendants utilize a single page to address this issue in its reply memorandum but expend an astonishing seven pages—of a ten-page limit— addressing arguments, which, by Defendants own account, are entirely irrelevant to the present motion.  *See* DE 27 at 4-10.