# LEEDS BROWN LAW, P.C.
One Old Country Road, Ste. 347
Carle Place, NY 11514
(516) 873-9550
_____*Attorneys at Law*_____

**VIA ECF**                                                August 28, 2023
Hon. Lee G. Dunst, U.S.M.J.
United States District Court, E.D.N.Y.
100 Federal Plaza
Central Islip, New York 11722

    Re:    *Agostisi v. Bendo, et al., 21-cv-07182 Motion to Compel Production of Non-Party*

Dear Hon. Judge Dunst:

    Pursuant to the Court's rules, Plaintiff and non-party Office of the New York State Comptroller ("OSC") submit this joint letter regarding the discovery disputes that remain since Plaintiff's subpoena *duces tecum* was served on December 9, 2022 (Ex A).

## PLAINTIFF'S POSITION

### I.    Background

    This dispute began on February 9, 2023, when Plaintiff received OSC's "responses and objections" (Ex B)[1] to his subpoena, which contained no responsive disclosures.[2] OSC's letter invoked a slew of privileges including: (1) attorney-client privilege; (2) deliberative process privilege; (3) mental process privilege; (4) public interest privilege; (5) law enforcement privilege; and (6) the work product doctrine (*Id.*). At the time, OSC did not serve a privilege log.

    On March 14, 2023, the parties held a meet-and-confer which OSC later memorialized (Ex C). (*Id.*). While the parties agreed on a framework, key issues remained unresolved (Ex D), such as those regarding OSC's draft (non-final) audit reports, and basic employment records regarding OSC attorney Eric Eichenlaub (*Id.*)[3] On March 17, 2023, Plaintiff again wrote to OSC to resolve some of these issues, agreeing to forego important records (Ex D). Plaintiff later agreed to postpone OSC's response deadline to April 30, *conditioned upon a limited partial production* which included, inter alia, *t*he official set of audit work papers (2019M-6[8] and 2019M-133) contained in OSC's database; and all draft audits/reports, and all electronic communications sent to/from Ira McCracken, Will Gomes and Gregory Bouchard (Ex E.) OSC replied to the email indicating its agreement and stating "Thanks for your understanding. April 30th works." (Id.).

---

[1] Exhibit B is a letter Plaintiff sent to OSC on March 3, 2023, incorporating OCS's responses and objections.
[2] Plaintiff has limited the exhibits submitted herewith. However, as the Court could issue a ruling based on this submission, Plaintiff has submitted the most important of them. They also display our extensive efforts to resolve this matter without court intervention.
[3] Plaintiff produced for OSC a memorandum he prepared in June 2019 documenting a conversation with OSC's auditors, Will Gomes and Greg Bouchard, which showed how these issues are relevant and linked.

On May 31, OSC produced a privilege log (Ex F).[4] While it identifies the privileges invoked, it does not purport to justify the assertion of any.

Subsequently, after being unable to locate the draft audits upon reviewing over 18,000 produced documents, Plaintiff complained about the non-production by email on June 12, 2023. In response, OSC claimed (by email dated June 16, 2023) that its agreement was limited to the extension it was seeking and it did not agree to produce the documents that were the consideration to our consent for the additional extension. In response, Plaintiff sent a final letter dated June 21, 2023 (Ex G) providing a thorough analysis of his entitlement to the draft audits.

In the June 21 letter, Plaintiff also explained his entitlement to a memorandum prepared by OSC attorney Mark Stevens, located in OSC's disclosures, which pertained directly to Plaintiff. (Id.). Lastly, Plaintiff utilized one of OSC's heavily-redacted emails between its attorneys and auditors to demonstrate the impropriety of those redactions. Specifically, Plaintiff highlighted an email [OSC0000561] from auditor Ira McCracken to Eichenlaub/Stevens that was completely redacted, except for the file name, which is entitled: "███████████████████████"[5] On July 5, OSC indicated that it would not alter its position (Ex H).

II.     **Argument**

Plaintiffs arguments derive mostly from the June 21 letter (Ex G) and the March 3 letter (Ex B). Accordingly, the Court is respectfully referred to these documents for a more complete recitation of the arguments. Plaintiff offers the following synopsis.

i.      <u>Draft Audits</u>. Stipulations entered between attorneys, which have been reduced to writing, are binding commitments. See Sprint Communications Co. L.P. v. Jasco Trading, Inc.. 5. F.Supp.3d 323, 328-29 (E.D.N.Y. 2014) (citing Clarke v. Shinseki, No. 06–CV–4358, 2009 WL 862237, at *4 n. 4 (E.D.N.Y. Mar. 31, 2009). Here, by March, Plaintiff had grown frustrated by OSC's failure to respond. When OSC indicated that it needed yet another extension, Plaintiff expressly conditioned it on OSC's agreement to provide the requested draft audits. OSC agreed. Later, however, OSC reneged by falsely claiming that it agreed only to the extension. This attempt to sever the benefit of its bargain from the attendant burden is unfair, and has prejudiced Plaintiff, who could have made this application in March. Furthermore, OSC's claim that the draft audits are privileged is flatly contradicted by Plaintiff's exacting analysis in the March 3 letter (Ex B).

ii.     <u>Claw Back Dispute</u>. OSC produced certain documents that it subsequently claimed were inadvertently produced. (See Ex J and I)(we submit these documents under seal as OSC continues to claim they are privileged). Ex. J is a full redacted email which was saved with the heading "███ ████████████████████████." Given the title of the email, it is impossible to believe that the entire email, if any portion of it, should have been redacted. This evidences OSC's inappropriate labeling

---

[4] As this portion of the log is 78-pages in length, only a sample page is included herein.

[5] OSC insisted on this portion of the letter being redacted. Accordingly, as patently absurd as that contention is, we are filing an unredacted version of this letter under seal. We ask that the Court assess for itself whether this redaction is appropriate and draw whatever inferences the Court deems appropriate from OSCs claim of privilege as to this language.

of documents as privileged. Similarly, as the Court can easily see from the text of Ex. I, it is not privileged at all. Further Ex. I was an email forwarding memos which were also not privileged, yet withheld (See, Ex G at 4-5). These documents were not prepared for the purpose of seeking or obtaining legal advice. The unproduced memos were created as part of the compliance audit to determine whether Plaintiff's separation payment was authorized and properly calculated. That is the very function of the "compliance audit," and the reason why the document was prepared. Accordingly, it is of irrelevant that the memo was prepared by an OSC attorney, as compliance audits can be financial or nonfinancial. This evidences that OSC has withheld (or redacted) communications between attorneys and staff, even when no privilege applies.

iii. <u>Redactions of Names from Citizen Letters</u>. OSC has withheld the names of nearly all individuals who sent it unsolicited letters regarding the audit. For the reasons set forth in the March 3 letter, there is no privilege which protects the identity of any individuals who injected themselves into the public domain by sending unsolicited letters to OSC, a state auditing agency. Additionally, the June 21 letter aptly illustrates why they are relevant (Ex G at 6).

iv. <u>Eichenlaub's Employment Records</u>. OSC attorney Eric Eichenlaub was assigned to this matter even though he was a former Long Beach resident, active in local politics, who had personal relationships with some of the key New Wave Democrats (See Ex B. at 13.) As evidence of bias is always relevant under FRE 607, Plaintiff is entitled to the basic and limited employment information requested in the subpoena (<u>Id</u>. at 12-13).

v. <u>Relevance</u>. "Relevance" is not the standard on a discovery motion. Rather, the request need only be "reasonably likely to lead to the discovery of admissible evidence." In short, Plaintiff's theory is that political operatives in Long Beach used political influence to affect the outcome of OSC's audit to use it as a tool to attack political rivals. Given all the irregularities in the audit process as detailed in the complaint, there is a good faith basis to believe this occurred. Internal communications and drafts are reasonably likely to reveal that OSC's position was influenced by politics. Moreover, OSC's objection would allow them to be the sole arbiter of relevance. That approach invariably leads to discovery abuses. OSC's approach is inimical to the discovery process because it precludes plaintiff from even assessing his arguments. For example, the "█████████████████████" email may reveal that the true reason for the work on this audit was, indeed, to be publicized for political purposes which dovetails with the themes in the Complaint. The non-production and privilege claims related to this email demonstrate OSC's abuse of its discovery obligations. Along those lines, OSC's "inadvertent disclosure" designation is not made in good faith when they had no right to withhold the document in the first place. As noted, the file at issue is relevant for two reasons: (1) it jibes with the themes of the Complaint, and (2) it demonstrates OSC's non-compliance with its discovery obligations.

vi. <u>Informants Privilege</u>. This is not identified as a privilege for certain citizen complaints and does not apply to all citizen communications.

The foregoing is not an exhaustive list of issues that were raised in the attached correspondence and/or that Plaintiff wishes to raise with the Court. However, the foregoing is truncated due to space limitations. As such, Plaintiff requests permission to submit a motion to compel, not to exceed 15 pages, in accordance with the proposed briefing schedule below. The

length of the motion is attributable mainly to the quantity of privileges invoked by OSC, which necessitate general responses (deliberative/mental process), document-specific responses (work product), or both (attorney-client).

## NON-PARTY OSC'S POSITION

The Plaintiff seeks to compel the production of (a) internal communications between OSC employees, (b) the personnel records of an OSC attorney, and (c) the identity of certain citizens who filed complaints with OSC. For the following reasons, the motion should be denied.

### A. Non-party OSC never agreed to waive its asserted privileges.

The Plaintiff's background statement is incorrect. OSC never agreed, either implicitly or explicitly, to waive the privileges asserted in OSC's timely written objections. OSC Ex. 1. Given how overly broad and unduly burdensome the subpoena was (over 59,000 potentially responsive documents), OSC met and conferred with the Plaintiff for the sole purpose of narrowing the subpoena's scope, but steadfastly maintained its privileges and thus, agreed to provide a privilege log.[6] The Plaintiff's April 28th email expressly confirmed that OSC would not waive any privileges by producing records before the completion of the privilege log. OSC Ex. 2. OSC produced all the documents to which OSC did not object (about 18,000 pages), as well as a two-part privilege log (146 pages). OSC Ex. 3 & 4.[7]

### B. OSC's internal deliberations/communications and personnel records are irrelevant.

The Plaintiff wrongly speculates that OSC's internal deliberations/communications are relevant to this proceeding because OSC was allegedly biased, and the City of Long Beach took certain actions based on recommendations contained in OSC's audit reports. *Neogenix Oncology, Inc. v. Gordon*, No. CV 14-4427 (JFB) (AKT), 2017 U.S. Dist. LEXIS 49293, at *28

---

[6] The Plaintiff exploits the lack of transcription of the parties' March 14, 2023 conference call and uses out-of-context quotations from emails, to mislead the Court. OSC never requested a second extension of the time to respond to the subpoena, and OSC was not required to produce all records by March 31, 2023, as the Plaintiff incorrectly claims. The Plaintiff extended the time to respond to February 10, 2023. OSC fulfilled its obligations by serving its written objections before the extended deadline. *Bounkhoun v. Barnes*, No. 15-CV-631A, 2019 U.S. Dist. LEXIS 140876, at *4 (W.D.N.Y. Aug. 20, 2019). OSC's February 9, 2023 written objections stated that, subject to those objections, OSC would produce any non-privileged records on a rolling basis. OSC Ex. 1, page 3. During the March 14, 2023 conference, the Plaintiff requested the production of all non-privileged records by March 31, 2023, giving OSC about two weeks to review over 59,000 records. OSC objected to the proposal as unduly burdensome because the records were voluminous and required extensive privilege redactions, and the preparation of a privilege log would be time-consuming. So, based on the context, OSC's subsequent agreement to make an initial partial production by April 30, 2023 was subject to the understanding and the parties' previous agreement that OSC would not produce any privileged documents, but would produce a privilege log.

[7] The Plaintiff incorrectly suggests that OSC's privilege log lacks sufficient details. OSC's log sufficiently describes the redacted/withheld materials. Among other things, the log lists the email sender and recipient, the date and time each email was sent, and the email subject line, as well as a categorical description. All the email addresses contain the domain name "@osc.ny.gov", confirming that the conversations are exclusively between OSC employees. It would be unduly burdensome and disproportionate to the needs of the case, to describe each redacted/withheld email with further specificity, because the withheld/redacted materials number in the thousands and are not directly at issue in this lawsuit. *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, No. 18-CV-4044 (BCM), 2021 U.S. Dist. LEXIS 205644, at *6-7 (S.D.N.Y. Oct. 25, 2021). Relatedly, rows reflecting non-privileged email attachments were blackened out from the log because those attachments were produced and are not in dispute.

(E.D.N.Y. Mar. 31, 2017). OSC is not a party to this litigation, and the Plaintiff's complaint is not challenging OSC's audits and/or administrative decisions. Moreover, OSC's internal communications were never shared with the public and reflect only the views of individual employees. *Citizens Union of N.Y. v. A.G. of N.Y.*, 269 F. Supp. 3d. 124, 148 (S.D.N.Y. 2017)(drafts and internal communications about drafts are irrelevant because administrative decisions are often subjected to repeated revisions). Also incorrect is the Plaintiff's conjecture that the personnel records of an attorney whose OSC employment began nearly a year after the commencement of the audits, will somehow show that OSC was biased.

### C. OSC's internal deliberations/communications are privileged.

First, the <u>deliberative process privilege</u> applies to the challenged communications. Each of the withheld/redacted documents is (1) predecisional (it was created prior to OSC's final decision on the matters contained in each document)[8] and (2) deliberative (it contains the writer's own analysis, viewpoint, or recommendations). And, because OSC's internal communications/deliberations are irrelevant, any interest the Plaintiff might possibly have in disclosure does not outweigh the privilege. *Bath Petroleum Stor., Inc. v. Sovas*, 309 F. Supp. 2d 357, 363 (N.D.N.Y. 2004).

Second, <u>the mental process privilege</u> also protects OSC's internal deliberations. An OSC audit is a quasi-judicial proceeding. *New York v State*, 40 N.Y.2d 659, 667 (1976). The materials reflecting opinions of individual OSC employees are protected from disclosure here, where OSC is not even a party. *Goetz v. Crosson*, 41 F.3d 800, 805 (2d Cir. 1994)("The inner workings of administrative decision making processes are almost never subject to discovery."); *Ferrari v County of Suffolk*, No. CV 10-4218 (JS) (GRB), 2012 U.S. Dist. LEXIS 207962, at *5 (E.D.N.Y. Feb. 14, 2012).

Third, <u>the attorney-client privilege and the work product</u> doctrine also cover many of OSC's internal communications. For instance, they apply to documents numbered OSC0021746 through OSC0021754,[9] which consist of a March 2019 email chain from an OSC staff attorney to OSC's General Counsel, attaching three internal, Microsoft Word memoranda prepared by, and reflecting the legal opinion of, the staff attorney. The March 2019 email chain also contains a previous email from the staff attorney to OSC auditors regarding certain legal advice. The attorney-client privilege protects these documents because OSC attorneys were coordinating to provide legal advice to their clients. *United States v. Atias*, No. 14-CR-403 (DRH)(SIL), 2016 U.S. Dist. LEXIS 200344, at *5-6 (E.D.N.Y. Dec. 30, 2016).[10] The work-product doctrine also protects the three memoranda containing the staff attorney's opinions and mental processes. *Upjohn Co. v United States*, 449 U.S. 383, 400 (1981); *United States v. Acquest Tr. LLC*, 319

---

[8] OSC issued its final audit reports on December 11, 2019. *See e.g.*, https://www.osc.state.ny.us/local-government/audits/city/2019/12/11/city-long-beach-payments-unused-leave-accruals-2019m-68 & https://www.osc.state.ny.us/local-government/audits/city/2019/12/11/city-long-beach-financial-condition-2019m-133.

[9] *See* OSC Ex. 4, page 31 (describing documents numbered OSC0021746 through OSC0021754).

[10] Similarly, the redacted portions of document no. OSC0000561 are covered by the attorney-client privilege, among others. It is a September 3, 2019 communication from an auditor to an OSC attorney, that was forwarded to other OSC attorneys and that kept OSC attorneys advised of developments regarding the then-ongoing audits in connection to the provision of legal advice. *Atias*, 2016 U.S. Dist. LEXIS 200344, at *5-6. Attached to document no. OSC0000561 is a media article. OSC redacted only the auditor's writing and produced the attached article. See OSC Ex. 3, page 72.

FRD 83, 92-93 (W.D.N.Y. 2017)(the work product doctrine protects documents prepared by agency counsel in connection with administrative proceedings).

### D. The informer's privilege protects the identity of certain citizens who filed complaints.

Under the informer's privilege, which applies to both civil and criminal cases, the government may withhold from disclosure the identity of persons who furnish information on violations of law. Here, regarding a handful of documents, OSC redacted only information identifying certain informant(s), but OSC produced the contents of the communication from the informant(s). *CFTC v. Parnon Energy, Inc.*, 2014 U.S. Dist. LEXIS 67175, at *10-11 (S.D.N.Y. May 14, 2014). The informants' identities are not relevant and material to the Plaintiff's lawsuit.[11]

### E. Protective order

The Court should direct the Plaintiff to delete the five privileged documents that OSC inadvertently produced, including document numbered OSC0021746 (described above). *See* Fed. R. Civ. P. 26 (b)(5) & 502. The Plaintiff refused to destroy those records and even said that he would use them in support of his motion to compel.

### F. The Court should not consider any argument that the Plaintiff failed to expressly raise in the body of this joint letter.

The Plaintiff's attempt to incorporate by reference arguments allegedly raised in previous correspondence to OSC is improper for many reasons. First, incorporating argument(s) by reference could cause OSC to inadvertently overlook the attempted incorporation. Indeed, the Plaintiff refused to send OSC a list of all the issues that the Plaintiff intended to present to this Court, as required by Your Honor's Individual Rules. Second, the attempted incorporation risks confusing the Court and OSC as to which "incorporated" arguments are actually being relied upon. Third, the attempted incorporation circumvents Your Honor's Rules, which limit each party's portion of the joint submission to three pages.

Thank you for your consideration.

Respectfully submitted,

_____
RICK OSTROVE

*Salomon Menyeng*
Salomon T. Menyeng
Assistant Counsel for State Audit & Litigation
NYS Office of the State Comptroller